**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CHRISTINA J. B.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No.  22-CV-280-MTS |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff Christina J. B. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant— taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On August 17, 2018, Plaintiff filed an application for both Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the SSA and Title XVI supplemental security income, 42 U.S.C. § 1381, *et seq.* (R. 455–70).  She alleged an inability to work beginning on September 1, 2008, due to limitations resulting from diabetes, sleep apnea, post-traumatic stress disorder ("PTSD"), high blood pressure, neuropathy, fibromyalgia, and morbid obesity.  (R. 274, 488).  Plaintiff was thirty-five years old at the time of the ALJ's decision.  (R. 462).  She has a high school education and past relevant work as a cashier, checker, and stock clerk.  (R. 275–78, 493–94).

Plaintiff's applications were denied both initially and upon reconsideration.  (R. 238, 298–361).  At Plaintiff's request, ALJ Deirdre Dexter conducted an administrative hearing on February

18, 2020. (R. 238). The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 238, 263–97). ALJ Dexter issued a decision on March 27, 2020, denying benefits and finding Plaintiff not disabled. (R. 238–57). Plaintiff sought review by the Appeals Council, which was denied on October 23, 2020. (R. 10–15). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 1, 2008. (R. 241). At step two, she found Plaintiff suffered from severe impairments of diabetes mellitus, peripheral neuropathy, obesity, hearing loss (right ear), bipolar disorder, anxiety disorder, personality disorder, and PTSD. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 243). Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light exertional work as defined in 20 CFR §§ 404.1567(b) and 416.967(b)" with the following additional limitations:

> The claimant is able to lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally. She is able to sit up to 6 hours in an 8-hour workday; and able to stand and/or walk up to 4 hours in an 8-hour workday. The claimant is occasionally able to climb ramps or stairs, and frequently able to balance. The job should not involve climbing ladders, ropes or scaffolds. The job should involve no more than moderate noise, as that phrase is defined in the Selected Characteristics of Occupations. The claimant is able to understand and remember simple, but detailed tasks. She is able to interact with supervisors as needed to receive work instructions but the job should not involve close direct interaction with supervisors. The claimant is able to work in proximity to coworkers but the job should not involve close communication or cooperation with coworkers in order to complete work tasks. She would work best in a job where she is able to work on her own. The job should not involve interacting with the general public. The claimant is able to sustain attention and concentration for up to 2 hours at a time when performing simple, detailed tasks. The claimant is able to sustain the mental demands associated with performing simple, detailed tasks throughout an ordinary workday

or workweek.

(R. 246–47).

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a cashier/checker, stock clerk, or cashier II. (R. 256). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of collator operator, routing clerk, and router, all of which she found existed in significant numbers in the national economy. (R. 257). As a result, the ALJ found Plaintiff had not been under a disability from September 1, 2008, through the date of the decision. *Id.*

## Errors Alleged for Review

Plaintiff makes several allegations of error in her challenge to the Commissioner's denial of benefits on appeal. First, Plaintiff argues the ALJ failed to apply the correct legal standard when assessing the medical opinions of record. (Docket No. 13 at 4). Second, she claims the ALJ erred in her step three analysis because she failed to consider Listing 12.03 when assessing Plaintiff's mental limitations.[1] *Id.* at 12. Third, she asserts the ALJ failed to properly assess the consistency of Plaintiff's complaints with the evidence of record. *Id.* Fourth, Plaintiff maintains the ALJ erred at step five because "[t]he decisional RFC fails to capture the breadth of [Plaintiff's] mental limitations found on the record." *Id.* at 15. In response, the Commissioner asserts the ALJ properly evaluated the evidence, and the decision is supported by substantial evidence. (*See* Docket No. 17).

## The ALJ's Consideration of the Opinion Evidence

Plaintiff seemingly argues the ALJ failed to apply the correct legal standard when assessing the medical opinions of record regarding Plaintiff's mental health. (Docket No. 13 at 5).

---

[1] Listing 12.03 refers to "schizophrenia spectrum and other psychotic disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

5

Generally, Plaintiff asserts the ALJ failed to engage in a proper supportability analysis; more specifically, she argues the ALJ's analysis was deficient as to Mesheila Flaming, LPC. *Id.* at 5–12.

For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Thus, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c, 416.920c(a). Instead, the ALJ must articulate how persuasive she finds each medical source's opinion by considering certain factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). These factors include: (i) supportability; (ii) consistency; (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) specialization; and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[2]

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). As to

---

[2] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

6

consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

### A. Evaluation of Plaintiff's Mental Health Records

The ALJ discussed Plaintiff's medical history in detail throughout the decision. (*See* R. 247–55). Ultimately, the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of [her] symptoms [to] not [be] fully consistent with the objective medical evidence and the other evidence of record." (R. 252).

#### 1. State Agency Psychological Consultants

State agency psychological consultants Cynthia Kampshaefer, Psy.D., and Mary Rolison, Ph.D., both evaluated Plaintiff in December 2018 and April 2019, respectively. (R. 302–14, 342–44). The consultants concluded that Plaintiff did not have limitations in understanding and memory but did have limitations as to sustained concentration and persistence and social interaction. (R. 311). The consultants reported moderate limitations in the abilities to carry out detailed instructions and to maintain attention and concentration for extended periods. *Id.* As to Plaintiff's social interaction limitations, the consultants both reported that Plaintiff was markedly limited in her ability to interact appropriately with the general public and moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 312). However, both consultants determined Plaintiff was not disabled. (R. 314, 345).

After addressing Drs. Kampshaefer and Rolison's opinions as to Plaintiff's mental RFC, the ALJ found them persuasive. (R. 255). The ALJ determined the opinions were "most consistent

7

with the record as a whole," given "[t]he State agency psychologists had benefit of the complete record present at the time they completed their medical findings, including Dr. Graybill's evaluation." *Id.*  However, based on Plaintiff's medical records and "the combination of multiple impairments," the ALJ found that Plaintiff was limited to a greater extent than found by the state agency psychological consultants.  *Id.*  She reasoned that, because the consultants did not personally examine Plaintiff or run diagnostic testing, their physical assessments were unpersuasive.  *Id.*  Instead, the ALJ determined Plaintiff "is more reasonably limited to the reduced range of light work."  *Id.*  The Court finds no error with the ALJ's evaluation of Drs. Kampshaefer and Rolison's opinions.  The ALJ's analysis complied with the regulation requirements.

Plaintiff also appears to argue the ALJ erred in adopting "expanded limitations in her decisional RFC."  (Docket No. 13 at 6).  Although the ALJ found Plaintiff to be more limited in the paragraph B factors than the consultants, (*see* R. 244–45, 308, 338), Plaintiff argues the ALJ expanded said limitations without the proper supportability analysis when she limited Plaintiff's understanding and remembering to "detailed tasks," and not "some detailed tasks" (Docket No. 13 at 6; *see* R. 247).

The Court is unpersuaded by Plaintiff's arguments regarding the mental RFC.  When assessing the "paragraph B" area of functioning, understanding, remembering or applying information, the ALJ discussed a number of sources of information, including: Plaintiff's testimony that she had difficulty handling cash correctly during her past employment; Sam Hider Health Center records stating Plaintiff claimed an IQ of 157 and that she is dyslexic; Billy Boyd's, Ph.D., determination that Plaintiff was of above-average intelligence, with an intact memory; therapy records stating Plaintiff could read and retain what she read; a physical examination by Ashok Kache, M.D., noting no speech or cognitive deficits; and a psychological examination by

Dr. Graybill estimating Plaintiff's intelligence as at least average. (R. 244). Further, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

### 2. Mesheila Flaming, LPC

The ALJ also discussed Mesheila Flaming's treatment of Plaintiff in detail. (R. 252–55). Ms. Flaming began treating Plaintiff in April 2018 and initially diagnosed her with borderline personality disorder. (R. 2268). In June 2018, Ms. Flaming later added a diagnosis of obsessive-compulsive personality disorder. (R. 2281). On February 28, 2020, Ms. Flaming completed a form titled "Social Security Treating Source Mental RFC Assessment." (R. 2563–64). In it, Ms. Flaming reported Plaintiff's following abilities, in addition to others, were all poor or markedly limited: understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; respond appropriately to supervision, co-workers, and usual work settings; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; and work without deterioration or decompensation causing the individual to withdraw from the situation or to experience exacerbation of symptoms or adaptive behaviors. *Id.* Ms. Flaming's assessment was based on clinical observations, signs and symptoms and patient history, but not objective findings. *Id.*

After discussing Ms. Flaming's opinions, the ALJ found them unpersuasive, determining the severity of Plaintiff's alleged symptoms to be inconsistent with other evidence, in addition to being inconsistent with Ms. Flaming's own treatment notes. (R. 253). The ALJ also found Ms. Flaming's opinions to be inconsistent with those of the State agency psychological consultants' findings, further "discounting the persuasiveness of Ms. Flaming's medical opinion." (R. 255).

The Court finds no error with the ALJ's evaluation of Ms. Flaming's opinions. The ALJ's analysis complied with the regulations.

### The ALJ's Step Three Analysis

As discussed above, the ALJ thoroughly discussed the evidence of record when finding Plaintiff was not disabled at step three. (*See* R. 244–46). "At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Dye v. Barnhart*, 180 F. App'x 27, *28 (10th Cir. 2006) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). While the ALJ is not required to discuss every piece of evidence available, she should discuss the evidence supporting her decision and explain why she found the plaintiff not disabled. *Id.*

The ALJ noted Plaintiff's self-reports of paranoia and delusional thinking, Dr. Graybill's reports of Plaintiff's delusions, and therapy records from 2016 indicating an active state of delusional thinking. *Id.* Although Plaintiff claims her "extensive documented issues with psychosis" warranted the ALJ's consideration of Listing 12.03, the ALJ discussed the evidence addressing Plaintiff's mental impairments in detail and explained why she found Plaintiff to not be disabled at step three. *See Dykes v. Astrue*, No. 10-cv-400-TLW, 2011 WL 4478727, at *8 (N.D. Okla. Sept. 26, 2011) (citing *Fisher-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005)). Furthermore, the ALJ's consideration of Plaintiff's mental impairments is not beyond meaningful judicial review. *See Dye*, 180 F. App'x at *29. Thus, the Court finds the ALJ did not err in not considering Listing 12.03.

### The ALJ's Consistency Determination

Next, Plaintiff argues the ALJ failed to properly assess the consistency of Plaintiff's reported symptoms with the evidence of record. (Docket No. 13 at 12–15). When evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). When analyzing symptoms, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7–*8.

Unless there is an indication the ALJ misread the medical evidence as a whole, deference must be given to the ALJ's evaluation of a claimant's pain or symptoms. *See Casias*, 933 F.2d at 801. However, an ALJ's findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence [s]he relies on in evaluating the [consistency of the claimant's subjective complaints],' [s]he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

The ALJ began by noting she considered the consistency of Plaintiff's symptoms with the objective medical evidence, as well as the medical opinions and prior administrative medical findings. (R. 247). Next, she discussed the two-step process dictated by SSR 16-3p and required under 20 C.F.R. §§ 404.1529 and 416.929. *Id.* The ALJ continued, considering Plaintiff's hearing testimony, including Plaintiff's anxiety and PTSD-related flashbacks, in addition to her diabetes mellitus. (R. 247–48). Plaintiff testified that these impairments impact her ability to function. *Id.* The ALJ then discussed the medical evidence in detail and addressed several of the aforementioned factors, including daily activities, the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken, treatment other than medication for relief of pain or other symptoms, and any other measures used by the claimant to relieve pain or other symptoms. (*See* R. 247–55, 967–1236, 1715–30, 2161, 2193–97). Specifically, the ALJ reviewed Plaintiff's physical and mental examinations, her history of treatment for obesity and diabetes mellitus (R. 248–50), her failure to consistently take her medications (R. 249–52), her positive response to psychiatric treatment, and her daily activities (R. 251–55). The ALJ concluded, based on her review of the evidence, Plaintiff's impairments did not result in the degree of functional limitation that Plaintiff alleged. (R. 248, 250).

The Court finds the ALJ conducted an appropriate analysis of Plaintiff's alleged symptoms and cited evidence in support of her consistency determination. Based on the evidence of record before the Court, it cannot determine the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801.

### The ALJ's RFC Determination

Lastly, Plaintiff asserts the ALJ erred at step five by "failing to capture the breadth of [Plaintiff's] mental limitations found on the record." (Docket No. 13 at 15). When assessing the

RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments . . . including [ ] medically determinable impairments that are not 'severe,' . . . when we assess [a claimant's RFC].")).

The ALJ stated that she considered all of Plaintiff's medically determinable impairments, severe and not severe, when assessing the RFC. (R. 243). The ALJ's discussion demonstrates she considered evidence of Plaintiff's diagnoses of GAD and anxiety, PTSD, OCD, bipolar disorder, depression, borderline personality disorder, and Plaintiff's experiencing delusional thinking. (R. 252–55). The ALJ concluded Plaintiff had an RFC for light work with additional limitations, including mental functional limitations. (R. 246–47).

Lastly, Plaintiff has not pointed to any medical records showing that the combined effect of her impairments would result in greater functional limitations than those included in the ALJ's RFC. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) ("Eggleston argues that the ALJ did not consider the combined effects of his impairments. The ALJ's opinion addresses Eggleston's various impairments, and we find nothing to suggest they were not properly considered."). Thus, the Court finds no merit to Plaintiff's argument.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 17th day of August, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRCT COURT